**STATE of Missouri, Respondent,**

v.

**John Gilbert PHILLIPS, Appellant.**

No. 46507.

Supreme Court of Missouri,
Division No. 2.

June 8, 1959.

John G. Phillips, appellant, in pro. per.

John M. Dalton, Atty. Gen., Robert T. Donnelly, Special Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

About two-thirty o'clock on July 19, 1954, Louis Otto, then nineteen years old, left his home in Crystal City to go to work at House Springs where he managed a concession stand in the park. Louis did not arrive at his destination and two days later his body was found eight miles north of Crystal City, about fifty yards off of Highway MM, near Barnhart, with a bullet wound through his head and another in the region of his eighth rib on the right side. The appellant, John Gilbert Phillips, was charged with Louis' murder and upon being tried a second time was found guilty of murder in the first degree and sentenced to life imprisonment. Upon this his second appeal Phillips claims that a verdict of not guilty should have been directed because there was no proof of the venue of the crime in Jefferson County, because there was no proof that Louis died from a wound inflicted by the gun offered in evidence, and because the state's evidence failed to show his guilt beyond a reasonable doubt. It is also urged that he is entitled to a new trial for the reasons that the state was permitted to reopen the case and attempt to prove venue in Jefferson County, that the court erred in failing to give an instruction on the effect of the defendant's failure to testify, and, finally, that the court erred in admitting his confession in evidence and in improperly instructing the jury upon the subject of the voluntariness of his confession.

In making some of his contentions the appellant entirely ignores the fact of his former appeal and the force of the decision, State v. Phillips, Mo., 299 S.W.2d 431, by which he was granted a new trial. While "the law of the case" is not a very popular doctrine and has its limitations (3 Am.Jur., Secs. 985–1000, pp. 541–554), particularly in criminal cases, it is in some circumstances as to certain matters peculiarly appropriate and in the absence of demonstrable error in the first decision (5B C.J.S. Appeal and Error §§ 1824–1827, pp. 193–200) the doctrine governs successive appeals involving substantially the same issues and facts. 5 Wharton's Criminal Law & Procedure, Sec. 2254, p. 512; State v. Allen, 363 Mo. 467, 251 S.W.2d 659. The appellant does not contend that the decision on his former appeal was erroneous in any respect, he ignores it and urges some issues as though they were open questions of first impression. Upon his former appeal the appellant was granted a new trial chiefly because of error in the giving of an instruction and thereafter the court gave its opinion upon some other matters which may not have been necessary to a disposition of the appeal, but the court did hold, necessarily, that the evidence of his guilt of murder in the first degree was sufficient for the jury. State v. Allen, supra; State v. Thomas, Mo., 180 S.W. 869. In this connection, the evidence in the two trials was substantially identical; in this trial it is worthy of note and commendation that the state's evidence was well organized, presented in chronological order and is perhaps more cogently convincing than upon the former trial. The essential facts and circumstances are set forth in the former opinion and it is not necessary to again detail them upon this appeal; it is sufficient to say that the record has been carefully re-examined and the evidence supports the charge and finding of the appellant's guilt in every respect, in fact the circumstances resemble those involved in State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245.

Louis Otto was well known to the Sheriff of Jefferson County and when his body was found off of Highway MM the sheriff, from his cap and clothes, identified it as Louis. As indicated the body was found 100 to 125 feet south of a creek just off of Highway MM about one and one half miles from Barnhart. Before submission to the jury the state was permitted to reopen the case and the sheriff testified that Louis' body was found in Jefferson County, Missouri. The court's discretion in thus permitting the state to reopen its case (23 C.J.

S. Criminal Law § 1055, p. 462) aside, the circumstances together with this court's judicial notice that Barnhart is in Jefferson County (State v. Kenyon, supra) plainly established the venue of the crime as Jefferson County.

■ As stated, there were two bullet wounds, one through Louis' head from the left temple and one near the eighth rib on the right side. The bullet from the head wound was not found but the coroner recovered the pellet from the chest wound. After the defendant wrecked Louis' car and started down the road a gun was found in the glove compartment of the automobile and there were three live bullets and two spent bullets in the gun. A ballistics expert, after tests, was of the opinion that the gun found in the glove compartment had fired the bullet found in Louis' body. Aside from the circumstantial evidence of Phillips' possession of the gun when he wrecked the automobile, he admitted its possession after taking it from a locker in Monroe, Louisiana. While the coroner was of the opinion that the wound through Louis' head, not the one in the chest, was the fatal wound, the jury could reasonably infer and find that the appellant had fired both bullets and thus establish the cause of death and the appellant's responsibility. State v. Lepke, Mo., 305 S.W.2d 432; State v. Dickson, 78 Mo. 438.

The appellant wrecked Louis Otto's automobile near the Wilde farm, about two miles south of Columbia, Illinois. He was there detained by three civilians who turned him over to the Chief of Police of Columbia and he refused to give a justice of the peace and the chief of police any information other than to deny that he had any connection with the automobile. He claimed that he had been hitchhiking and spent the two previous nights in hotels in Cape Girardeau and Poplar Bluff. Upon his refusal to talk to the officials in Columbia Phillips was delivered into the custody of the Sheriff at Waterloo, Illinois. It was not then suspected that he had any connection with Louis' murder—the fact was not then known, the officers were suspicious that he was guilty of some offense in connection with the automobile and it was in that regard that they were questioning him. He first denied any knowledge of the automobile or any connection with it. When the officers confronted him with the fact that the license plate on the automobile had been issued to his half sister, Mrs. Hunter, in East St. Louis for a Pontiac automobile, Phillips changed his story, admitted stealing the plate from his half sister's automobile and claimed that a soldier driving the Dodge had picked him up near Cape Girardeau, Missouri, and had left him with the automobile at Chester, Illinois. He then said that he had driven the car to his half sister's in East St. Louis and then to Renault, Illinois, on to the point where the car was wrecked. By that time the Sheriff of Jefferson County and Louis' sister and brother arrived in Waterloo, the title to the Dodge automobile having been traced to Louis, and for the first time it was suspected that he had some connection with Louis' disappearance. A Shell oil "grease sticker," dated July 19, 1954, was found on the frame of the Dodge automobile and when Phillips was confronted with the sticker and the Dodge's mileage and the fact that the route and mileage he gave were inconsistent he again changed his story and said that Louis Otto had picked him and the soldier up and when Louis turned off on a side road the soldier pulled a gun on him, made him get out of the car and walk off towards the creek bed. He said that the soldier returned to the car alone and said, "Let's get out of here," and they drove to East St. Louis where they separated. It was then that Phillips told them of the approximate location of Louis' body. The interrogation of Phillips had then been intermittent, from July 19 to July 21, sometimes for but a few minutes and sometimes for as long as three, four or five hours. On at least one occasion when he was questioned Phillips was dressed in his shorts and, for some unexplained reason,

did not have on his artificial leg. And on another occasion he was wearing ill-fitting clothes furnished by the Sheriff of Monroe County. But up to this point in the trial of the case there had been no objections to the testimony and no claim that any confession he may have given was involuntary. The fact was that the written confession was not obtained or given to either the Sheriff of Jefferson County, the F.B.I. agent, or to the Sheriff of Monroe County, Illinois, it was given to the Prosecuting Attorney of Monroe County, Illinois.

On July 22, 1954, the Prosecuting Attorney and the Sheriff of Jefferson County, Missouri, appeared at the office of the Prosecuting Attorney of Monroe County, Illinois, for the purpose of extraditing Phillips. Phillips being present, the Illinois state's attorney advised him that he did not have to waive extradition but the appellant said, "I know my rights, and I will sign the papers." The Prosecuting Attorney and Sheriff of Jefferson County were leaving the state attorney's office with Phillips when he stopped at a water cooler for a drink. The Illinois prosecutor, standing next to Phillips, said, "Why don't you help clear this thing up?" Phillips replied, "Well, in Missouri they have a gas chamber." As the group reached the door the Illinois lawyer asked if he might question Phillips alone and upon their assent he took him into an office nearby and after asking him about his treatment while in jail, his relatives and other matters he told him that he was charged with Louis' murder in Missouri. Then the appellant said, "If I plead guilty, what will I get?" The lawyer told him that he was not familiar with Missouri law and practice but would inquire and left the room. He said that no promises were made but he told Phillips that Missouri procedure was similar to that of Illinois and finally Phillips looked down at the floor and said, "I did it." The lawyer said, "You did what, did you kill the boy?" and Phillips replied, "I did it." About that time the Prosecuting Attorney of Jefferson County walked into the room and the Illi-

nois lawyer said, "Mr. Phillips has admitted doing it." The Missouri lawyer said, "I will tell you exactly what happened. He was running away and you shot him in the back." Phillips said that it did not happen that way and then "he told the story of just how the entire thing took place."

The Illinois lawyer called in a public stenographer and Phillips' confession was reduced to writing, the Missouri lawyer advised him that he did not have to make a statement, and he signed the separate pages of the written confession. It was at this point in the trial, when the written confession was offered in evidence, that there was objection that by reason of prolonged questioning by five or six people that the statement was not voluntary. The jury was then excluded and the court heard evidence on the defendant's oral motion to exclude the statement. The Prosecuting Attorney of Monroe County, the Sheriffs of Monroe and Jefferson Counties and the F.B.I. agent testified to the circumstances of Phillips' confinement and interrogation and finally to the circumstances surrounding the giving of the written confession. The defendant did not testify upon this hearing or in the trial and offered no evidence whatever, particularly none tending to show that he had been mistreated, promised leniency, or, except for the intermittent interrogation over a period of three days, that the confession was not voluntary. In addition the physical circumstances corroborated the confession in many respects and a filling station attendant in Crystal City identified the defendant as the person with Louis when Louis drove into his filling station on the highway about 2:30 on July 19, 1954, and purchased a dollar's worth of gasoline. The circumstances in which the confession was obtained were detailed to the jury, the confession was admitted in evidence, and, by appropriate instruction, the voluntariness of the confession was submitted to the jury. In all these circumstances it may not be said that the confession was involuntary as a matter of law (compare: State v.

Ramsey, 355 Mo. 720, 197 S.W.2d 949 and State v. Bradford, Mo., 262 S.W.2d 584), the court followed the acceptable Missouri procedure, conducted a preliminary hearing as to the voluntariness of the confession, and submitted the evidence and the issue to the jury and the jury could and did find that it was voluntary (State v. Weidlich, Mo., 269 S.W.2d 69) and being voluntary was, of course, admissible and if believed established the crime and the defendant's guilt beyond a reasonable doubt. State v. Widick, Mo., 292 S.W. 52; State v. Bradford, 362 Mo. 226, 240 S.W.2d 930; State v. Pillow, Mo., 169 S.W.2d 414.

The appellant did not testify and the fact of his failure to do so was not and could not be referred to by counsel or considered by the court or jury. V.A.M.S. § 546.270; 42 V.A.M.S. Sup.Ct. rule 26.08; Const.Mo.1945, Art. 1, Sec. 19, V.A.M.S. In this connection, the court may not "sum up or comment upon the evidence" (V.A.M.S. § 546.380), and for this reason it is inadvisable if not erroneous for the court of its own volition to give an instruction on this subject. 23 C.J.S. Criminal Law § 1266, p. 832; State v. Long, 324 Mo. 205, 22 S.W.2d 809. In any event, it is not a subject or question of law necessary for the information of the jury upon which the court was bound to instruct the jury (V.A.M.S. § 546.070) and the defendant not having requested an instruction there was no error in the court's failure to instruct on the subject. State v. Rutledge, Mo., 267 S.W.2d 625.

As indicated, the essence of the defendant's cause was considered and adversely determined upon his former appeal, and there being no manifest error "upon the record before them" (V.A.M.S. § 547.270), the court necessarily affirms the judgment and sentence.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.